# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Patrick A. Dadd,                                    Civ. No. 14-4933 (MJD/BRT)

       Plaintiff,

v.

Anoka County; Deputy Nichole Kempenich,
in her individual and official capacities;                    **REPORT AND**
Deputies J. Does 1-4, the identities of whom                  **RECOMMENDATION**
are presently unknown to Plaintiff, all in
their individual and official capacities; and
Nurse J. Doe 5, the identity of whom is
presently unknown to Plaintiff, in an
individual and official capacity;

       Defendants.

Zorislav R. Leyderman, Esq., The Law Office of Zorislav R. Leyderman, counsel for
Plaintiff.

Andrew T. Jackola, Esq., Anoka County Attorney's Office, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

This case is before the Court on Defendants' motion to dismiss the Complaint

pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 10). The matter has been referred to the

undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn.

LR 72.1. (Doc. No. 16.) For the reasons stated below, this Court recommends that

Defendants' motion be denied.

# BACKGROUND[1]

On March 28, 2014, Plaintiff Patrick Dadd underwent dental surgery that involved cutting into his jaw bone and extracting a tooth. (Doc. No. 1, Compl. ¶ 8.) Since Plaintiff was expected to suffer severe pain while recovering, his oral surgeon prescribed Vicodin to take as needed. (*Id.*) Plaintiff filled his prescription on March 28, 2014, and began taking the pills as needed according to his prescription. (*Id.*)

The next evening, on March 29, 2014, Plaintiff was arrested at his home. (*Id.* ¶ 9.) He advised the arresting officers that he was recovering from dental surgery and was on Vicodin, and the arresting officers agreed to bring Plaintiff's Vicodin with him to jail. (*Id.*) Plaintiff had taken Vicodin earlier in the day, but had not taken it on the evening of his arrest. (*Id.*)

The arresting officers transported Plaintiff to the Anoka County Jail, and transferred him into the custody of the Anoka County Sheriff's Office and Defendant Deputy Kempenich. (Compl. ¶¶ 9–10.) The arresting officers gave Plaintiff's prescribed Vicodin to Deputy Kempenich, who then booked Plaintiff into the jail. (*Id.* ¶¶ 10–11.) During the booking process, Plaintiff told Deputy Kempenich that he had dental surgery the day before, that he was in severe pain from the surgery, and that he needed to take the prescribed medications that she had received. (*Id.* ¶ 11.) Deputy Kempenich did not address Plaintiff's pain or make arrangements for him to take his medication or see a nurse.

---

[1]     The following facts are set forth in Plaintiff's Complaint. This Court assumes, for purposes of this motion, that these facts are true.

(*Id.*) Also, during the booking process, Deputy Kempenich filled out a medical questionnaire in which she wrote that Plaintiff did not have any dental problems and wrote "N/A" in response to whether he needed to be referred to a registered nurse. (*Id.*) Plaintiff then noticed three deputies ("Defendant Deputy Does 1-3") standing nearby and complained to them about his severe dental pain and his need to take his medications. (Compl. ¶ 12.) Those deputies did not address his concerns. (*Id.*)

Thereafter, Plaintiff was taken to a cell and locked in for the night. (*Id.*) Throughout the night, Plaintiff suffered "severe and excruciating" pain and was unable to sleep. (*Id.*) Because of the pain, Plaintiff rolled toilet paper into balls, soaked them in cold water, and applied them to the wound inside his mouth. (*Id.*)

The next morning, on March 30, 2014, Plaintiff was allowed to visit with a nurse ("Defendant Nurse J. Doe 5"). (Compl. ¶ 14.) During that visit, Plaintiff told the nurse that he had dental surgery on March 28 shortly before his arrest, that he was in severe and excruciating pain, and that he was prescribed pain medicine to alleviate the pain, which was delivered to the jail by the arresting officers. (*Id.*) He begged the nurse to allow him to take his medication or to take any type of prescription or over-the-counter pain medicine to help with the pain. (*Id.*) The nurse refused. (*Id.*) Plaintiff then told the nurse that he did not sleep the night before because of the pain and that he had spent most of the night using rolls of toilet paper soaked in cold water to help with the pain. (*Id.*) He again asked the nurse to help with the pain, but the nurse refused and sent Plaintiff away. (*Id.*)

Throughout the remainder of that day, Plaintiff could not chew anything with his

mouth because of the severe and excruciating pain, and as a result, did not eat anything all day. (Compl. ¶ 15.) He continued to use toilet paper rolled into balls and soaked in cold water to deal with the pain. (*Id.*) At one point, Plaintiff complained to another deputy ("Defendant Deputy J. Doe 4") about his pain and inability to chew or eat because of the pain. (*Id.* ¶ 16.) The deputy had noticed that Plaintiff was not eating. (*Id.*) Plaintiff told the deputy that he had dental surgery on March 28 shortly before his arrest, that he was in severe and excruciating pain, and that he was prescribed pain medicine to alleviate the pain, which was delivered to the jail by the arresting officers. (*Id.*) He also asked the deputy to provide some sort of help with his pain, but the deputy did not respond. (*Id.*)

At noon on March 30, 2014, the jail doctor directed the nurse to give Plaintiff Ibuprofen three times per day to control his pain. (Compl. ¶ 21.) The nurse, however, did nothing in response to this directive. (*Id.*) Plaintiff did not receive any medication or treatment for his pain on March 30, 2014, and spent most of the day crying and in complete agony. (*Id.* ¶ 17.) That night, he again was unable to sleep and spent the night crying and placing cold, wet toilet paper in his mouth to control the pain. (*Id.* ¶ 18.)

The next morning, on March 31, 2014, Plaintiff was unable to eat breakfast because of his inability to chew, and Defendants offered him no help or treatment for his pain. (*Id.* ¶¶ 19, 21.) Plaintiff was taken to court that morning and later brought back to jail, where he spent the rest of the day in severe pain with no treatment or medication. (*Id.* ¶ 19.) He was released from jail that evening at approximately 5:30 p.m.; during his release, jail staff located Plaintiff's prescription medication and returned it to him. (Compl. ¶ 20.) On his

way out, Plaintiff complained to jail staff about the suffering he had undergone during his time there, and one of the deputies who heard his complaints responded that jail was not supposed to be "comfortable." (*Id.*)

On December 4, 2014, Plaintiff filed the present Complaint against Defendants, alleging that as a result of Defendants' actions he "endured severe and excruciating physical pain, suffering, and discomfort as well as emotional trauma, anguish, and distress." (*Id.* ¶ 22.) He asserts three claims for relief: (1) Deputies Kempenich and J. Does 1-4 and Nurse J. Doe 5 violated his Fourteenth Amendment right to substantive due process through their deliberate indifference towards his serious medical needs; (2) Nurse J. Doe 5 and Anoka County committed medical malpractice; and (3) Defendant Deputies Kempenich and J. Does 1-4, Nurse J. Doe 5, and Anoka County[2] acted negligently in failing to properly document his dental problems and severe pain during booking, and in failing to respond to his requests for pain treatment and medical attention. (*Id.* ¶¶ 25, 29, 33.) Defendants have now moved to dismiss this action in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[2]     Defendant Anoka County is a municipal corporation and the public employer of all other Defendants. Plaintiff sues Anoka County directly and on a theory of respondeat superior pursuant to Minn. Stat. § 466.02. (Compl. ¶ 6.) Specifically, Plaintiff asserts that Anoka County is vicariously liable for the malpractice of Defendant Nurse J. Doe 5 (*id.* ¶ 31), and is vicariously liable for the negligence of Defendant Deputies Kempenich and J. Does 1-4 and Nurse J. Doe 5. (*Id.* ¶ 35.)

**DISCUSSION**

## I.    STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).[3] *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (stating that the court "may consider some materials that are part of the public record or do not contradict the complaint") (quotations omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must

---

[3]    When matters outside the pleadings are considered by the court, a motion to dismiss for failing to state a claim is converted into a motion for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d). Here, although both parties agreed that the documents they submitted under affidavits are encompassed by the Complaint, this Court does not consider those documents in making its recommendation on the motion to dismiss and, thus, the motion is not converted into a motion for summary judgment.

contain facts with enough specificity "to raise a right to relief above the speculative level."
*Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that
discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556. Whether a
complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.
1986). And "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a
dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## II.   ANALYSIS

### A.   Sufficiency of Plaintiff's Allegations – 42 U.S.C. § 1983 Claim

#### (i)   Deliberate Indifference to Medical Needs

As a pretrial detainee, Plaintiff's right to medical care arises under the Due Process
Clause of the Fourteenth Amendment. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th
Cir. 2014). But, as explained by the Eighth Circuit, courts analyze such claims under the
Eighth Amendment deliberate-indifference standard applicable to convicted inmates. *See
id.*

To state a cognizable Eight Amendment claim for failure to provide medical
treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence
deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106
(1976). The Eighth Circuit summarized the deliberate indifference standard as follows:

> It is well established that "[d]eliberate indifference to a prisoner's serious
> medical needs is cruel and unusual punishment in violation of the Eighth
> Amendment." *See Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th
> Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50
> L.Ed.2d 251 (1976)). "To show deliberate indifference, plaintiffs must prove

an objectively serious medical need and that prison officials knew of the
need but deliberately disregarded it." *Id.* (citing *Crow v. Montgomery*, 403
F.3d 598, 602 (8th Cir. 2005)). Prisoners may prove deliberate indifference
by showing that the total deprivation of medical care resulted in "pain and
suffering" or "a lingering death." *Estelle*, 429 U.S. at 103, 97 S. Ct. 285. But
a total deprivation of care is not a necessary condition for finding a
constitutional violation: "Grossly incompetent or inadequate care can [also]
constitute deliberate indifference, as can a doctor's decision to take an easier
and less efficacious course of treatment." *Smith v. Jenkins*, 919 F.2d 90, 93
(8th Cir. 1990) (citations omitted). To state a claim based on "inadequate
medical treatment . . . [t]he plaintiff 'must show more than negligence, more
even than gross negligence, and mere disagreement with treatment decisions
does not rise to the level of a constitutional violation.'" *Alberson v. Norris*,
458 F.3d 762, 765 (8th Cir. 2006) (quoting *Estate of Rosenberg v. Crandell*,
56 F.3d 35, 37 (8th Cir. 1995)).

*Langford v. Norris*, 614 F.3d 445, 459–60 (8th Cir. 2010). In other words, "[a] prima facie

case alleging deliberate indifference requires the inmate-plaintiff to demonstrate that [he]

suffered from an objectively serious medical need and the prison officials actually knew of

but deliberately disregarded that need." *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 499

(8th Cir. 2008) (quotations omitted). And a serious medical need is "one that is so obvious

that even a layperson would easily recognize the necessity for a doctor's attention."

*Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 851 (8th Cir. 2006) (quoting *Pool v. Sebastian

Cnty., Ark.*, 418 F.3d 934, 944 (8th Cir. 2005)).

Here, Plaintiff has provided enough factual allegations to plausibly support a

deliberate indifference claim. First, Plaintiff sufficiently alleges that he had a serious

medical need during the time he was held at the Anoka County Jail. He alleges that he had

dental surgery that involved cutting into his jaw bone and extracting a tooth; that it was

expected that he would suffer severe pain after the surgery; that his oral surgeon prescribed

8

Vicodin for him to take as needed; and that he experienced severe and excruciating pain throughout his detention from March 29, 2014 through March 31, 2014. (Compl. ¶¶ 8, 11, 12, 14, 15, 16, 18, 19, 22.) Indeed, for purposes of this motion, Defendants concede that the "serious medical need" element has been met. (Doc. No. 11, Mem. of Law in Supp. of Defs.' Mot. to Dismiss 10 n. 4 ("Defendants concede that the severity of Plaintiff's condition, while in question, is not subject to determination at this stage on a motion to dismiss. Plaintiff alleges that he endured severe pain and that he had been treated with a prescription pain medication, which, for present purposes, is sufficient to cross the 'seriousness' plane.").)

Second, Plaintiff sufficiently alleges that Deputies Kempenich and J. Does 1-5 were aware of his serious medical needs. Plaintiff alleges that while at the Anoka County Jail, he told Deputy Kempenich about his surgery, that he was prescribed medications for the resulting pain, and that he was in severe pain. (Compl. ¶ 11.) In addition, the arresting officers handed Deputy Kempenich the Vicodin that Plaintiff had been prescribed to manage his pain. (*Id.* ¶ 10.) Plaintiff also alleges that he told Deputies J. Does 1-3 about his severe dental pain and his need for his medications. (*Id.* ¶ 12.) The following morning, Plaintiff was allowed to visit a nurse (*id.* ¶ 14.), so it is reasonable to infer that one of these four Defendants not only heard but acknowledged Plaintiff's complaints of pain by permitting that meeting. Further, Plaintiff's allegations indicate that Defendant Nurse J. Doe 5 was also aware of his serious medical needs because he told the nurse about his dental surgery, that he was in severe and excruciating pain, and that he was prescribed pain

9

medicine to help with the pain (which was delivered to the jail). It is reasonable to infer that the nurse also acknowledged Plaintiff's complaints of pain because even though the nurse refused to provide him immediate help in the form of pain relief (*id.*), the nurse did later consult the jail doctor about Plaintiff's report of pain. (*See id.* ¶ 21.) Defendants do not contest the nurse's awareness of Plaintiff's medical condition, but argue that it cannot be presumed that the nurse knew of Plaintiff's need for pain treatment after the jail doctor prescribed Ibuprofen because there are no allegations indicating that Plaintiff communicated with the nurse again that he was still in pain at that later time. (Doc. No. 11, Def.'s Mem. 13, 18.) The reasonable inference from the allegations in the Complaint, however, is that Nurse J. Doe 5 was aware of the pain that Plaintiff was in both before and after the nurse received the doctor's order, since he had visited with the nurse only a couple of hours before at most. As for Deputy J. Doe 4, Plaintiff alleges that he told that Defendant about his dental surgery, his severe pain, his inability to chew or eat, and that he was prescribed pain medicine, and he asked for some sort of help with the pain; and this was only after Deputy Doe 4 had noticed that Plaintiff was not eating. (*Id.* ¶ 16.)

Third, Plaintiff adequately alleges that Deputies Kempenich and J. Does 1-5 deliberately disregarded his medical needs. Plaintiff alleges that he requested help from each of those Defendants after he informed them of his pain and that they ignored those requests. (Compl. ¶¶ 10, 11, 12, 14, 16.) The fact that Plaintiff only had minimal contact with J. Does 1-4 is immaterial. *See Robinson v. Moreland*, 655 F.2d 887, 890 (8th Cir. 1981) (concluding that two of the defendants, who had contact with the inmate only once

after the injury, were liable). In addition, with respect to Nurse J. Doe 5, Plaintiff alleges

that the nurse was directed by the jail doctor to administer Ibuprofen to him and did not do

so even after that directive. (*Id.* ¶ 21.) Given these alleged facts, this Court concludes that

Plaintiff has alleged sufficient facts to state a plausible due process claim. *See* Fed. R. Civ.

P. 12(b)(6).[4]

### (ii)    Qualified Immunity

Defendants alternatively argue that they are entitled to dismissal based on qualified

immunity. Qualified immunity shields government officials from liability for civil

damages if "their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982). There are two factors a court considers in a qualified immunity analysis

---

[4]    Defendants contend that Plaintiff's claim cannot survive because the facts alleged show that he received medical attention quickly enough and that one or more of the Defendants ensured that he "received treatment." (Doc. No. 11, Def.'s Mem. 11.) Further, Defendants assert that "[a] prison medical professional is not bound by the treatment prescribed by an outside physician and 'remains free to exercise his or her independent professional judgment [because] an inmate is not entitled to any particular course of treatment.'" (*Id.* at 18 (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)).) What Defendants ignore is that even though Plaintiff was allowed to see a nurse the morning after he arrived at the jail, he did not "receive treatment" for his pain. The facts alleged are clear that Plaintiff received no medication or treatment to alleviate his pain (other than his own makeshift pain reliever in the form of wet toilet paper balls) while he was incarcerated. Such facts are sufficient to state a claim. *See Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991) (holding that a nurse's alleged failure to dispense pain medicine, as was prescribed, was sufficient to state an Eighth Amendment claim because the nurse caused the plaintiff to "suffer[] needlessly when relief [was] readily available," and stating that the fact that the inmate had to "resort to such measures" as using toilet paper and water to treat his wound violated the Eighth Amendment because it was "inconsistent with contemporary standards of common decency").

under § 1983: (1) whether the facts alleged show that the public official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Court concludes that when taking the facts alleged as true and viewing the facts alleged in Plaintiff's favor, Plaintiff has raised a plausible claim that Defendants violated a constitutional right that was clearly established at the time of Plaintiff's incarceration. Therefore, dismissal of the deliberate indifference claim based on qualified immunity is not warranted at this stage.

### (a) Constitutional Right

Defendants argue that the constitutional right at issue is Plaintiff's asserted right "to the desired course of medical treatment," and contend that right was "not clearly established such that a reasonable officer in a similar situation would know that her conduct violated the law." (Doc. No. 11, Def.'s Mem. 9.) Defendants misconstrue what constitutional right is at issue. It is not whether there is a right to a desired course of medical treatment; it is whether a pretrial detainee has a constitutional right to adequate medical care while in custody, which he does. *See West v. Atkins*, 487 U.S. 42, 55 (1988) (discussing the state's "constitutional duty to provide adequate medical treatment to those in its custody). And as explained earlier, that constitutional right is violated when prison officials exhibit "deliberate indifference to a prisoner's serious illness or injury . . . ." *Estelle*, 429 U.S. at 105.

To establish such deliberate indifference in the context of a claim for

12

constitutionally inadequate medical care, an inmate must show "more than negligence, more even than gross negligence . . . ." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Rather, the inmate must show that prison officials acted recklessly by disregarding a known risk to the inmate's health. *See Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (explaining that deliberate indifference is a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health") (quotation omitted). As particularly relevant here, "[d]elay in the provision of treatment . . . can violate inmates' rights when the inmates' ailments are medically serious or painful in nature." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1055 (8th Cir. 1989).

In light of the above, this Court concludes that Plaintiff's allegations, taken as true, state his constitutional right to adequate medical care. Defendants do not dispute these legal principles. Instead, they argue that the facts alleged by Plaintiff cannot support a conclusion that they "intentionally ignored" Plaintiff's condition or that any of the Defendants acted on an "improper motive or animus." (Doc. No. 11, Def.'s Mem. 10; Doc. No. 20, Defs.' Reply 7.) But "intent" is not the standard; nor is it required to have an "improper motive." *See Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) ("A claim of deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk.") (quotations omitted). As stated above, viewing the facts alleged in the light most favorable to Plaintiff, this Court concludes that Plaintiff has stated a plausible claim that the Defendants recklessly disregarded a serious medical condition of which they were aware, which is sufficient to

13

constitute deliberate indifference to his medical needs.

### (b) Clearly Established Right

The next question that the court asks is whether the constitutional right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Johnson-El*, 878 F.2d at 1048. The analysis of whether the constitutional right was clearly established focuses on "whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1866 (2014). Thus, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (stating that "general statements of the law are not inherently capable of giving fair and clear warning" that specific conduct violates the Constitution). However, it is not necessary to have a prior "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). So, "[a]lthough earlier cases need not involve fundamentally or materially similar facts, the earlier cases must give officials fair warning that their alleged treatment of the plaintiff was unconstitutional." *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011) (quotations omitted); *see also Hope*, 536 U.S. at 739–41 (stating that the facts of the existing precedent need not be "materially similar" or "fundamentally similar" to those

14

of the instant case).

Here, Plaintiff's constitutional right to adequate medical care for his pain was clearly established at the time of the alleged misconduct, both as a matter of general legal principles and specific case law. As already explained, the allegations in the Complaint, taken as true, indicate that Defendants either wholly ignored or prolonged treatment for Plaintiff's known post-surgical pain. In light of both Supreme Court and Eighth Circuit precedent, a reasonable official would have known that ignoring Plaintiff's pleas for help under the circumstances pleaded in this case would violate Plaintiff's constitutional right to adequate medical care. The Supreme Court has made clear that prison officials have a constitutional obligation to provide such care for those in their custody, an obligation that may be violated when those officials "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle*, 429 U.S. at 103–105; *see also Farmer*, 511 U.S. at 832 ("[P]rison officials must ensure that inmates receive adequate . . . medical care . . . .") (quotations omitted); *Langford*, 614 F.3d at 461 (8th Cir. 2010) ("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim.") (quotations omitted).

Relying on these general legal principles, the Eighth Circuit has affirmed the denial of a motion for qualified immunity in circumstances similar to those alleged here. In *Foulks v. Cole County*, 991 F.2d 454, 455 (8th Cir. 1993), a plaintiff was brought to jail with an instruction sheet from his doctor regarding care to be given for plaintiff's head injury, and that instruction sheet was ignored along with the plaintiff's complaints of

15

feeling sick and throwing up blood for two days. Like in *Foulks*, Plaintiff presented at jail with instructions from his doctor (i.e., the Vicodin prescription), and through his two-day stay, the officers and jail nurse ignored his complaints of pain. The Eighth Circuit in *Foulks* held that the individual officers' failure to respond to the inmate's condition sufficiently stated a deliberate indifference claim and concluded that "[t]he defendants . . . failed to show that their actions were objectively reasonable in light of clearly established law." *Id.* at 457.[5]

In light of *Foulks* and other caselaw, the prison officials here, including Nurse J. Doe 5, had fair warning that failure to provide prescribed pain medications (or pain management in general) for a serious medical condition, including post-operative pain, is unconstitutional. *See Estelle*, 429 U.S. at 105–06 (stating that prison officials can be held liable for deliberate indifference for "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); *see also Majors v. Baldwin*, 456 F. App'x 616, 617 (8th Cir. 2012) ("We . . . conclude . . . that Majors did state a deliberate-indifference claim . . . by alleging that [the defendants] withheld prescribed pain medication and did not provide adequate post-operative treatment."); *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 795–96 (8th Cir. 2006) (reversing summary judgment in favor of jail employees and stating that "the knowing failure to administer prescribed

---

[5]     This Court recognizes that the serious medical condition in *Foulks* was not the same as Plaintiff's condition and pain after dental surgery, which Defendants concede is still a serious medical condition. These types of factual distinctions are relevant to allegations of damages, which are not at issue in this motion.

medicine can itself constitute deliberate indifference"); *Johnson v. Hay*, 931 F.2d 456, 462

(8th Cir. 1991) (concluding plaintiff had sufficiently stated a claim against a prison

pharmacist for deliberate indifference, noting that the pharmacist "deliberately disregarded

the very course of treatment prescribed by [the plaintiff's] physicians"); *Crooks v. Nix*, 872

F.2d 800, 805 (8th Cir. 1989) (stating that "failure to provide adequate or proper pain

medication" is sufficient to state a deliberate indifference claim); *Ellis v. Butler*, 890 F.2d

1001, 1004 (8th Cir. 1989) (holding that failure to administer pain medication is sufficient

to state a claim for deliberate indifference and reversing the district court's dismissal for

failure to state a claim); *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980)

(holding that inmates have a right to receive treatment prescribed and that deliberately

interfering with such treatment is unconstitutional).[6]

The prison officials also had fair and specific warning that failure to provide pain

medications or management for a post-operative dental condition, or other serious dental

---

[6] Other circuits have also found that failure to provide pain medicine can violate the constitution. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (holding that a complaint alleging that a prison nurse refused to give pain medication prescribed by a physician stated a claim under the Eighth Amendment); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (concluding that failure to administer prescribed pain medicine on one occasion was sufficient to support an Eighth Amendment claim, and that the right to receive pain medicine is clearly established); *Boretti*, 930 F.2d at 1154–55 (holding that failure to provide prescribed pain medication, when the result was physical pain and suffering without any other long-term injury, was sufficient to state a deliberate indifference claim); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("[A] prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering."); *Martinez v. Mancusi*, 443 F.2d 921, 924 (2d Cir. 1970) (finding an Eighth Amendment violation when a prison doctor refused to administer medication prescribed after surgery).

pain, is unconstitutional. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (concluding that untreated dental pain, coupled with swelling, bleeding, and difficulty sleeping and eating, is sufficient to state a claim for deliberate indifference); *Moore v. Jackson*, 123 F.3d 1082, 1085–89 (8th Cir. 1997) (holding that "intense" and "severe" dental pain, if deliberately ignored, is sufficient to state a claim for deliberate indifference); *see also Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) (reversing district court's grant of summary judgment to a sheriff who ignored an inmate's dental pain, stating that failure to provide dental care to an inmate in pain could support a deliberate indifference claim).

The facts in the cases cited above are not, of course, exactly the same as the facts in this case; however, Defendants concede Plaintiff presented a serious medical condition, that based on the Complaint, was ignored. Thus, the unlawfulness of Defendant's actions, in light of pre-existing law, would have been apparent. *See Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (quotations omitted)); *Nelson v. Corr. Med. Servs.*, 58 F.3d 522, 533 (8th Cir. 2009) ("[A]n Eighth Amendment claimant need not identify a factually identical case to satisfy the 'clearly established' requirement.").

Furthermore, although Plaintiff's untreated pain did not last as long as in cases cited

by Defendants (*see Hartsfield*, 371 F.3d at 457 (taking six weeks to arrange for dental treatment); *Moore*, 123 F.3d at 1084–87 (taking eight months for plaintiff to receive treatment); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (having a three-week delay in dental care); *Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994) (waiting four weeks to extract tooth)), there is no bright line defining when the lack of medical care becomes unconstitutional. None of the cases cited by Defendants stand for the proposition that there needs to be a certain amount of delay (no matter how serious the condition or intense the pain) before a plaintiff can state a viable claim for deliberate indifference.[7]  Indeed,

---

[7]  Defendants, without citing any authority, also state that "no reasonable officer would permit a detainee in her charge to consume narcotics without first receiving medical clearance and before verifying that the medication is what the detainee represents it to be." (Doc. No. 11, Def.'s Mem. 14–15.) But even if that were true, it does not, by itself, defeat Plaintiff's claim. Here, as alleged, Defendants *made no attempt* to verify the prescription during Plaintiff's detention despite their awareness of his pain and that he had recently undergone dental surgery. At the hearing, Defendants conceded that there is generally a nurse on call that could be consulted with during bookings that occur after normal business hours. Further, at this stage of the case, there has been no discovery on the jail's policies regarding the intake of prescription medications upon booking or the options that the Defendants had for verifying Plaintiff's prescription at the time of booking or any time thereafter, information which may bolster Plaintiff's claims even further.

Nor is Defendants' assertion that "Plaintiff's reference to his 'prescribed pain medicine' would make a reasonable deputy give less credence to the request because it may indicate drug-seeking behavior" sufficient to warrant granting dismissal at this stage. (Doc. No. 11, Def.'s Mem. 17.) Plaintiff alleges that he was prescribed Vicodin the day before he was arrested, and his prescription was handed to Deputy Kempenich upon booking and remained at the jail during his detention. Nothing alleged in the Complaint indicates that Defendants were precluded from looking at that prescription bottle to see that it was prescribed by a doctor the day before, or that they were hindered in any way from consulting with a doctor, nurse, or pharmacy at the time of booking or any time thereafter to confirm that the prescription was legitimate.

existing caselaw confirms that delaying treatment for two days, as is alleged here, is sufficient to constitute a constitutional violation. *See Robinson*, 655 F.2d at 890 (concluding that not treating severe pain (other than providing ice) for two days was sufficient to prove an Eighth Amendment violation); *Edwards v. Snyder*, 478 F.3d 827, 830–32 (7th Cir. 2007) (holding that the allegations of delayed treatment for two days for a severely injured finger rose to the level of a constitutional violation).

It may turn out that when the facts are developed in this case, some or all of the Defendants will be entitled to a judgment in their favor because, for example, it may be shown that they were not deliberately indifferent to Plaintiff's medical condition but acted in an objectively reasonable manner that was not in violation of Plaintiff's constitutional rights. But at this stage of the case, the Court must accept Plaintiff's factual allegations, and the Plaintiff has plausibly alleged that Defendants violated his clearly established constitutional rights by exhibiting deliberate indifference to his medical needs.

**(B)     State Malpractice and Negligence Claims**

Defendants originally moved to dismiss Plaintiff's state law claims for malpractice and negligence based on his failure to comply with Minn. Stat. § 145.682, which requires an affidavit of expert review in support of a state malpractice claim; however, they acknowledged that the deadline for Plaintiff to do so had not yet passed. (Doc. No. 11, Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") 6, 20.) In Plaintiff's response, he indicated that he had complied with § 145.682. (Doc. No. 18, Pl.'s Mem. of Law in Opp'n 35.) At the hearing on the motion, Defendants represented that they had now

received Plaintiff's submission regarding his expert and stated that the submission was sufficient. Therefore, Defendants' § 145.682 argument is now moot and this Court will not address it further.

The only other argument advanced by Defendants against Plaintiff's state claims is that Plaintiff's negligence claim—to the extent that it asserts negligence when Defendants failed to properly document his dental problems and severe pain during booking—fails because he was seen by a nurse the morning after his booking and, thus, he cannot prove that the negligence caused him any harm. (Doc. No. 11, Defs.'Mem. 27.) Again, Defendants ignore the fact that Plaintiff pleads that he received *no* treatment when he saw the nurse or at any time thereafter, and that he experienced severe pain and suffering from the time he was booked onward. A reasonable assumption based on the Plaintiff's allegations is that had Defendants properly noted his severe dental pain and need to see a nurse during the booking process, he likely would have had his prescription verified and would have been given pain relief that evening, shaving hours and perhaps days from the time he spent suffering. This Court concludes that Plaintiff has sufficiently stated a claim for negligence.[8]

---

[8]     Defendants also argue that Plaintiff's negligence claim should be construed as a negligent misrepresentation claim, and therefore should be dismissed because the Minnesota Supreme Court "has expressly declined to recognize the tort of negligent misrepresentation involving the risk of physical harm." (Doc. No. 20, Defs.' Reply 15 (quoting *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 350–51 (Minn. Ct. App. 2001)).) Because Defendants raised this argument for the first time in their reply memorandum, this Court declines to address this argument. *See United States v. Deering*,

(Footnote Continued on Next Page)

### (i)     State Official Immunity

Defendants assert that they are entitled to official immunity under Minnesota law on Plaintiff's negligence claim. Official immunity under Minnesota law "generally applies to prevent a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable to an individual for damages." *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 505 (Minn. 2006) (quotations omitted). It only applies when an official is charged with executing discretionary functions, as opposed to ministerial functions. *Id.* "This immunity extends to shield governmental entities from vicarious liability for an officer's actions." *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) (citing *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn.1998)). Official immunity does not, however, shield an official's discretionary functions when they are undertaken willfully or with malice. *Id.*; *see also Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1062 (8th Cir. 2013) (stating Minnesota's official immunity standard).

First, the conduct under scrutiny must be defined as either ministerial or discretionary. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006). "A discretionary act is one for which an official must exercise 'judgment or discretion.'" *Dokman v. Cnty. of Hennepin*, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001) (quoting *Johnson v. State*, 553

---

(Footnote Continued from Previous Page)
179 F.3d 592, 597 (8th Cir. 1999) (noting the court need not address an argument made for the first time in a reply brief), *cert. denied*, 528 U.S. 945 (1999).

N.W.2d 40, 46 (Minn. 1996)). "A ministerial act involves merely the execution of a specific, absolute duty." *Id.* In this case, Plaintiff alleges that Defendant Deputies Kempenich and J. Does 1-4, Nurse J. Doe 5, and Anoka County had a duty to both properly document his dental problems and pain during booking and had a duty to respond to his requests for pain treatment and medical attention. Plaintiff argues that these duties are ministerial in nature and are not protected by official immunity, while Defendants contend that their actions were discretionary and not done with malice.

Although "a written policy by itself does not make an act ministerial . . . . a written policy indicates a ministerial duty if it creates a sufficiently narrow standard of conduct that the employees feel bound to follow." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 865 (8th Cir. 2006) (citations and quotations omitted). This Court is unable, at this stage of the case, to determine whether the Defendants' actions were ministerial or discretionary because the facts underlying that determination have yet to be discovered, including any relevant policies, what those policies require, and the employees' understanding of those policies. In addition, Plaintiff has pleaded facts that plausibly support a conclusion that the Defendants' actions were ministerial. Therefore, Defendants are not entitled to official immunity at this time.[9] *See Twombly*, 550 U.S. at 556 (stating that to survive a Rule 12 motion to dismiss, the plaintiff need only plead "sufficient facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]"); *see also Boretti*, 930

---

[9]     For the same reasons, Defendant Anoka County has not shown it is entitled to vicarious official immunity at this stage of the proceedings.

F.2d at 1156 (concluding that the administration of prescription pain medication to an inmate is a ministerial function, not a discretionary one).

The Court notes that even if there was enough at this stage to determine that Defendants' acts were discretionary, when viewing all inferences in Plaintiff's favor, Plaintiff has pleaded facts in his Complaint that indicate that the actions were done willfully. (*See* Compl. ¶¶ 10, 11, 12, 14, 16); *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (stating that malice in this context "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right") (quotation omitted); *see also Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999) (stating that an official is not entitled to official immunity if he "intentionally commit[s] an act that the official has reason to believe is legally prohibited"). And "[g]enerally, the question of whether an official acted with malice is a question of fact for the jury." *Sang v. City of St. Paul*, Civ. No. 09-455 (RHK/SRN), 2010 WL 2346600, at *7 (D. Minn. June 8, 2010) (citing *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990)).

For all the reasons stated above, Defendants' motion to dismiss should be denied.

## RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Rule 12(b)(6) Motion to Dismiss the Complaint (Doc. No. 10), be **DENIED**.

Date:   May 4, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 18, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief within **fourteen days** after service thereof.   All briefs filed under this rule shall be limited to 3500 words.   A judge shall make a de novo determination of those portions of the Report to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.